**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO.:  5:09CV119-RLV**

| | |
|---|---|
| **ABT, INC.,** | |
| **Plaintiff,** | |
| **v.** | **Memorandum and Order**<br>**Granting Preliminary Injunction**<br>**in Favor of Plaintiff ABT** |
| **PETER JUSZCZYK and**<br>**SPORTSFIELD SPECIALTIES, INC.,** | |
| **Defendants.** | |

     **THIS MATTER** is before the Court on competing Motions for Preliminary Injunction.

(Documents ##10, 46, 64) An evidentiary hearing was held March 15, 2010 through March 17, 2010.

The parties were permitted to submit supplemental briefing following presentation of the evidence.

These matters are now ripe for disposition.[1]

## I.  Procedural Background __

      Plaintiff ABT commenced suit in Iredell County Superior Court on September 30, 2009, with

a Complaint for Declaratory Relief and Damages. Defendants removed the case to federal court on

October 30, 2009.  Plaintiff filed its Verified First Amended Complaint on November 5, 2009,

alleging 1) breach of contract (Noncompetition Agreement, Confidentiality Agreement, and Phone

and Electronic Rights Agreement); 2) violation of a NC statute prohibiting computer trespass, N.C.

---

[1] In addition to seeking injunctive relief, ABT moves to amend its Complaint.  (Documents ##222, 226)  ABT also moves for sanctions based upon: 1) Rule 11 for failure to conduct due diligence prior to alleging Lanham Act violations and 2) the theory that Sportsfield and Juszyek intentionally destroyed or concealed certain evidence from ABT.  (Documents ##73, 90) ABT seeks an instruction at trial that an adverse inference may be drawn against Defendants as a result of the destruction of evidence. ABT also moves for partial summary judgment on Sportsfield's Lanham Act claim.  (Document #168) For now, the Court will hold these motions in abeyance.

Gen. Stat. §14-458; 3) tortious interference with contract by SportsField; and 4) unfair and deceptive trade practices and misappropriation of trade secrets against both Defendants.

At the same time ABT filed its Verified First Amended Complaint, Plaintiff moved for Expedited Discovery and a Preliminary Injunction. (Documents ##10, 14) The preliminary injunctive relief sought by ABT is as follows:

> to enjoin Juszczyk and Sportsfield from disclosing, using or in any way relying on any ABT proprietary, confidential or trade secret information, including but not limited to, ABT sales price lists, sales performance data, product performance data, project quotes, project data, leads, business action plans, business forecasts, plant layout schematics, SWOT (Strengths, Weakness, Opportunities, Threats) analyses of markets and competitors, financial data and information, third party confidential information, customer and supplier contacts and preferences, and drawings, schematics, and information regarding ABT products in development; require Defendants to immediately return all ABT information, data or property in their possession, custody or control; require Defendants to preserve all potential evidence in this case; enjoin Juszczyk from communication or contact in any form or via any medium with any ABT customers or contacts with whom he had contact [] during the course of his employment with ABT from February 1, 2008 through September 8, 2009; and enjoin Juszczyk from otherwise violating the Noncompetition Agreement, the Confidentiality Agreement, and the Electronic Rights Agreement.

(Verified First Am. Compl. ¶27)

Sportsfield filed its Answer, Affirmative Defenses & Counterclaim on November 20, 2009. (Document #17) Defendant Juszczyk's Answer & Counterclaim was filed on November 25, 2009.[2] (Document #29) Juszczyk initially alleged that the Court lacks personal jurisdiction.[3] In Counterclaims, Defendant Juszczyk alleges tortious interference with contract by ABT, breach of contract[4], invasion of privacy, and abuse of process. Juszczyk seeks both compensatory and punitive damages.

---

[2] The magistrate judge authorized an extension of time. (Document #28)

[3] Juszczyk has not pursued dismissal for lack of personal jurisdiction. In any event, the Court is satisfied that there are sufficient contacts to support a finding of specific jurisdiction over Juszczyk in North Carolina.

[4] Juszczyk's breach of contract claim arises out of ABT's alleged failure to reimburse business expenses for travel - with an actual damages claim of $3,393.73 plus interest.

Sportsfield filed a First Amended Answer & Counterclaim on December 11, 2009. (Document #35) Sportsfield's Counterclaims against ABT include: false advertising and false designation of origin under the Lanham Act - 15 U.S.C. §1125(a), unfair trade practices and unfair competition, and intentional interference with business relations.[1] Sportsfield seeks dismissal of all causes of action against it, a declaration that the contracts at issue are invalid and unenforceable, injunctive relief enjoining ABT from engaging in the kinds of conduct alleged within its Counterclaims, that the Court issue an order requiring the recall and destruction of any false advertisements, 15 U.S.C. §1116, and increased damages under 15 U.S.C. §1117 for willful violation of 15 U.S.C. §1125(a) as well as punitive damages.

On December 15, 2009, the parties appeared before the Court for a Status Conference. After hearing from the parties, the Court authorized expedited discovery and directed the parties to propose a Scheduling Order consistent with the Court's instructions. (Document #42)

On December 18, 2009, ABT filed its Answer to Sportsfield's Amended Counterclaims. (Document #43) On December 28, 2009, ABT filed its Answer to Sportsfield's Amended Complaint. (Document #45)

Sportsfield filed a competing Motion for Preliminary Injunction against ABT on January 15, 2010, based upon its Lanham Act claim for false advertising. (Document #46)

Unrelated to the matters at hand, on February 8, 2010, ABT initiated a new civil action against Sportsfield seeking a Declaratory Judgment with respect to the parties' rights relevant to Trademark Registration No. 3,254,178 for the JUMPFORM® mark. The relief sought in the new civil action includes a judgment finding non-infringement by ABT, 28 U.S.C. §§ 2201-02, and

---

[1] The Complaint includes a breach of contract claim based upon the parties' 5/14/04 settlement agreement. The parties have since stipulated to the voluntary dismissal without prejudice of Sportsfield's counterclaim alleging breach of contract pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure. (Document #78)

requiring Sportsfield to cancel its registered trademark pursuant to 15 U.S.C. §1064.[2]  (*See ABT, Inc. v. Sportsfield Specialties, Inc., Civil Docket No.: 5:10CV10*).


## II. Standard For Injunctive Relief

"A preliminary injunction is an extraordinary remedy afforded prior to trial at the discretion of the district court that grants relief *pendente lite* of the type available after the trial." The Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 575 F.3d 342, 345 (4th Cir.2009); In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 524-26 (4th Cir.2003); *see also* De Beers Consol. Mines, Ltd. v. United States, 325 U.S. 212, 220-21 (1945).   "The party seeking the preliminary injunction must demonstrate by "a clear showing" that, among other things, it is likely to succeed on the merits at trial." Obama, 575 F.3d at 345 (*citing* Winter v. Nat'l Ress. Def. Council, Inc., 129 S.Ct. 365, 376 (2008)), *vacated by* 103 S.Ct. 2371 (April 26, 2010), *reinstated in relevant part by* 607 F.3d 355 (4th Cir. June 8, 2010).


Accordingly, a party seeking a preliminary injunction must establish a clear showing:

> (1) that he is likely to succeed on the merits;
>
> (2) that he is likely to suffer irreparable harm in the absence of preliminary relief;
>
> (3) that the balance of equities tips in his favor; and
>
> (4) that an injunction is in the public interest.


Winter, 129 S.Ct. at 374-76 (*internal citations omitted*); Obama, 575 F.3d at 346-47 (overruling the Blackwelder balance-of-hardship test consistent with the holding in Winter).   Significantly, in Winter, the Supreme Court expressly "rejected a standard that allowed the plaintiff to demonstrate only a "possibility" of irreparable harm...." Obama, 575 F.3d at 346 (*citing* Winter, 129 S.Ct. 375-76).

---

[2] ABT contends that Sportsfield obtained its U.S. Trademark Registration for the JUMPFORM® mark by making false representations to the U.S. Patent & Trademark Office about the significance of the terms ' jumpform' 'jump' or 'form' in the industry.

## III. ABT's Motion for Preliminary Injunction

The Court finds that ABT is entitled to injunctive relief on multiple grounds.  <u>For purposes of preliminary relief only</u>, however, the Court will confine its factual findings and conclusions of law to ABT's statutory misappropriation of trade secrets claim and contractual claims alleging disclosure of confidential information and breach of the Noncompetition Agreement.  The relevant facts are:


- ABT's SportsEdge Division ("ABT") and Sportsfield ("SSI") are competitors in the outdoor sports equipment and sports construction industry

- ABT manufactures drainage and trench-forming systems, turf anchors, and some sports field and track equipment

- ABT's products are sold under the SportsEdge® product line

- SSI manufactures a broader range of sports and field equipment, including, modular products, ball safety systems, scoreboards, multi-purpose junction box (ComBox®), football goals, football and soccer goal systems (GoalPak®), field event padding, and valve boxes (TurfCool®)

- In addition to manufacturing products, ABT and SSI both market and sell products such as track and field equipment as well as products, equipment and accessories for other outdoor sports

- ABT and SSI bid on many of the same sports construction projects despite the fact that they offer distinct products and services in other areas of their respective businesses

- ABT and SSI are the only two entities in the sports construction industry that offer "one-stop shopping," meaning both are able to offer drainage systems and equipment

- ABT and Sportsfield employees work closely with sports architects, designers and contractors within the United States (Oliver Decl. ¶17)

- In recent years, ABT and SSI have had a number of cross-over employees, including Chris Cucchiara, who currently serves as the Product Manager of ABT's SportsEdge Division[3]

- Peter Juszczyk was hired by Cucchiara and employed by the SportsEdge Division of ABT from February 1, 2008 through September 9, 2009

- At the outset of his employment with ABT, on or around February 1, 2008, Juszczyk and ABT entered into an Agreement for Confidentiality and Inventions ("CA" or "confidentiality agreement") and a Noncompetition Agreement ("Non-compete")

- On September 1, 2009, Juszczyk copied confidential, proprietary, and trade secret information maintained on his ABT laptop and belonging to ABT to his personal Seagate external hard drive

- The ABT data Juszczyk copied included project quotes, a price list for Hellas Construction, product analysis, S.W.O.T. analysis and sales data by month, year and region

- Juszczyk took all of his computer files with him and a folder dedicated entirely to SportsEdge's business

- Juszczyk took this proprietary information belonging to ABT / SportsEdge without ABT's consent or authorization

- Upon resigning from ABT, Juszczyk immediately began working for Sportsfield on September 9, 2009

- Sportsfield received ABT's proprietary information from Juszczyk with the knowledge and understanding that Juszczyk was in possession of the files as a result of his employment with ABT (Moxley Dep. 182-83)

---

[3] Chris Cucchiara began his employment in the outdoor sports equipment and construction industry with ABT. Cucchiara went to work with Sportsfield from 1999 through 2003. At the time of Cucchiara's employment with Sportsfield, ABT and Sportsfield had a business relationship whereby Sportsfield sold drainage equipment used in sports construction projects that was then manufactured by ABT. Cucchiara eventually returned to ABT in August 2003. ABT and Sportsfield ended their business relationship in 2004. Although Sportsfield attempts to minimize the degree of competition between the parties, it's the Court's view that the previous business relationship between ABT and Sportsfield has contributed to the existence of an intensely competitive environment.

- Sportsfield made the ABT information available to its automation staff on September 10, 2009, at the SSI headquarters in Delhi, New York

- The files from Juszczyk's Seagate hard drive were copied to Sportsfield's Maxtor hard drive per the directive of David Moxley, Sportsfield's Director of Sales (Moxley Dep.184-85)

- Christopher Maney, with Sportsfield Automation, created a "back up" of the ABT data (Maney Dep. at 12; Moxley Dep. 185)

- Counsel for ABT alerted Sportsfield that it intended to file suit and requested that all discoverable information be preserved and maintained during the litigation (*i.e.*, imposed a "litigation hold");

- ABT commenced litigation in state court on September 30, 2009

- On or around October 1, 2009, after learning of the threat of litigation, Maney deleted Sportsfield's back-up of the ABT data. (McMinn Dep. at 75)

- On or around October 13, 2009, approximately two (2) weeks after ABT's Complaint was filed, SSI restricted Juszczyk's access to the company's computer network

- At some later time, Sportsfield also reassigned Juszczyk from the outdoor sports equipment department to a newly created position aimed at developing SSI's indoor sports equipment products and sales

- After this lawsuit was filed, on December 7, 2009, Juszczyk produced to ABT his personal Seagate computer hard drive for inspection by a forensic expert selected by Plaintiff ABT. (Heslin Decl. ¶¶ 8,9)

- ABT's forensic computer expert, Susan T. McMinn ("McMinn"), analyzed Juszczyk's Seagate computer hard drive as well as the computer assigned to him during his employment with ABT and subsequently prepared a declaration detailing her findings, which are incorporated herein by reference, as well as the supplemental declaration prepared by McMinn

- **ABT has demonstrated a "clear showing" of likelihood of success on the merits regarding its North Carolina Trade Secrets Protection Act claims of misappropriation against both Juszczyk and SSI**

  - The ABT data taken by Juszyzek included trade secrets protected by the North Carolina Trade Secret Protection Act ("TSPA")[4]

  - The SportsEdge folder, the heart of ABT's misappropriation claim, contained 580 quotes prepared by ABT's inside sales employees for purposes of bidding on future projects

  - Juszczyk agreed during his deposition that the SportsEdge quotes were "internal" "confidential" and that he didn't share this information while he worked with ABT (Juszczyk Dep. 377)

  - The ABT project quotes for active projects had independent actual or potential commercial value because the quotes could be used by a competitor to underbid ABT on a given project (3/15/2010 Hr'g Tr. at 75-76)

---

[4] "Trade secret" is defined by the TSPA as:

> [B]usiness or technical information, including but not limited to a formula pattern, program, device, compilation of information, method, technique, or process that:
>
> a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and
>
> b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C. GEN. STAT. §66-152(3).

ABT argues that the compilation of data, particularly the large number of quotes, has commercial value in that the compilation reveals how ABT builds its quotes as well as its business strategy. For purposes of this Memorandum and Order, the Court does not need to address whether the ABT data compilation (as opposed to individual ABT quotes, etc.) constitutes trade secret information protected by the North Carolina statute.

- Juszczyk recognized the commercial value of an ABT project quote when he told Inside Sales Manager, Doug Sohns, about an active project, "All you have to do is beat the attached [SportsEdge] quote ...." (3/15/2010 Hr'g Tr. 121-24; Pl.'s Hr'g Ex. 40 at 121-22)

- SSI's possession of ABT's price lists and quotes unique to Hellas Construction constitutes a violation of the North Carolina Trade Secret Protection Act in that access to that information provided SSI with a competitive advantage over ABT

- SSI's possession of ABT's SportsEdge folder likewise constitutes a violation of the North Carolina Trade Secret Protection Act in that access to that information provided SSI with a competitive advantage over ABT

- ABT undertook reasonable measures under the circumstances to maintain confidentiality of its proprietary information

- ABT sought to protect its computer files and data by implementing Computer User Guidelines, and by requiring individual employees to utilize computer logins and passwords before access to the system was permitted   (Pl.'s Closing Brf., Ex. C);

- On February 14, 2008, Juszczyk signed a five-page internal ABT memo with the subject heading: "New Computer User Guidelines, Instructions, Sign-off, and Notes," indicating his understanding and agreement (Pl.'s Closing Brf., Ex. C  at 5 ; Jenrette Decl. ¶10);

- ABT's Computer User Guidelines Memo expressly references ABT's purpose in requiring the employee to periodically  perform specific maintenance actions: "to fulfill ABT data security requirements...."

- ABT's Computer User Guidelines Memo expressly references ABT's purpose in requiring employee logins: "This is another way in which our company data and your sales information can stay secure."  (Pl.'s Closing Brf., Ex. C at 1)

- ABT's computers were configured in such a way as to 1) require a unique login ID and password for employee access; 2) partition information within the system so as to limit access; and 3) limit employees' access to particular types of information consistent with the scope of the employee's responsibilities and duties;

- ABT's project quotes all contained the following confidentiality provision:

  "This document contains proprietary information and is solely intended for the recipient only. The recipient, by accepting this document, agrees that neither this document nor the information disclosed herein, nor any part thereof shall be copied, reproduced or transferred to others for any purposes except as specially authorized in writing by SportsEdge." (Pl.'s Hr'g Ex. 40 at 88-90)

- The ABT project quotes – at least for active or pending projects (projects that had not been awarded yet, *e.g.*, Wright City project) – were not shared with competitors and were not readily ascertainable in the industry (3/16/2010 Hr'g Tr. 185; 3/17/2010 Hr'g Tr. 464-65)

- ABT has not experienced any incidents of "hacking" (*i.e.*, access without a user name and password) into its computer system during the last 16 years

- Juszczyk disclosed ABT sales bids and quotes with Sportsfield's sales staff (inside and outside sales), engineers and upper-management

- One specific example of disclosure by Juszczyk and Sportsfield is the sharing of ABT's confidential quote with its business partner, ACO Polymer Products, Inc., in order to underbid ABT and win the Wright City project (Pl.'s Hr'g Ex. 40 at 19-34; Exh. 39)

- Juszczyk was the only person to ever use the ABT work computer because it was brand new when it was issued to Juszczyk and Juszczyk was the only ABT employee with an employee user profile [pjuszczyk] (McMinn Suppl. Decl. ¶6; Jenrette Decl. ¶7)

- Juszczyk misappropriated ABT's trade secrets with the initial download of the ABT data on September 1 and 2, 2009, and by disclosing the same to SSI and others

- SSI misappropriated ABT's trade secrets by copying the data Juszczyk provided from his ABT computer on September 10, 2009, and by repeatedly disclosing ABT's information to various individuals within SSI and related to SSI through business, etc.

- Juszyzek's and SSI's acquisition, disclosure, and use of ABT's trade secrets without express or implied authority or consent constitutes misappropriation under N.C. GEN. STAT. §66-152(1).

- **ABT has demonstrated a "clear showing" of likelihood of success on the merits regarding its breach of contract claim asserting violation of the Confidentiality Agreement for unauthorized disclosure to third parties[5]**

  - The relevant portion of the Confidentiality Agreement entered into between ABT and Juszczyk on February 1, 2008 reads:

    > The Employee shall not at any time (whether during or after its employment by the Company) or in any manner, either directly o[r] indirectly, divulge, disclose or communicate to any person, firm or corporation in any manner whatsoever confidential, proprietary or material information affecting or relating to the Business, including without limitation, any of the Company's customers, the identity and terms of its relationships with its distributors, representatives and agents, prices it obtains or has obtained from the sale or at which it sells its products and services, its manner of operation, its methods of production, its plans, designs, formulae, processes or other similar data, the parties hereby stipulating that as between them the same are important and confidential and gravely affect the effective and successful conduct of the Business and its goodwill and that any breach of the terms of this paragraph shall be a material breach of this Confidentiality Agreement.
    > (CA, ¶2)

  - The Confidentiality Agreement also includes an express acknowledgement by the Employee "[t]hat the covenants set forth in paragraphs 2 and 3 above are reasonable in all respects and are necessary to protect the legitimate business and competitive interests of the Company ...."  (CA, ¶5(a))

  - The Confidentiality Agreement is supported by consideration, namely, stock options granted to Juszczyk on the date of execution (CA, at 1)

---

[5] This cause of action is supported by many of the same facts identified in support of the misappropriation of trade secret claim.  Rather than recite those particular facts again, the Court will simply rely on the entire record, including the instant Memorandum and Order, to support its ruling.

- The Confidentiality Agreement is enforceable under North Carolina law

- The Confidentiality Agreement sought to preserve ABT's confidential information and prevent disclosure to third-parties

- Juszczyk breached the Confidentiality Agreement by sharing ABT's confidential and proprietary information with SSI and others

- One specific example of Juszczyk's breach of the Confidentiality Agreement is the disclosure to SSI personnel of ABT's plans and designs for the improvement of the Hellas goal posts (April 2009 Letter from Cucchiaro to Hellas President)

- **ABT has likewise demonstrated a "clear showing" of likelihood of success on the merits regarding its breach of contract claim asserting violation of the Noncompetition Agreement, namely, the non-solicitation clause**

  - Under North Carolina law, in order for a restrictive covenant to be valid and enforceable, it must be:

    1) in writing;
    2) reasonable as to time and territory
    3) part of the employment contract
    4) based on valuable consideration
    5) designed to protect a legitimate business interest of the employer

    *See* Hartman v. W.H. Odell & Assocs., Inc., 450 S.E.2d 912, 916, 117 N.C.App. 307, 311 (1994).

  - Juszczyk's employment with ABT was conditioned upon Juszczyk's promise to abide by the terms of a Noncompetition Agreement

  - Effective for a period of two years from his date of termination, and within the continental United States, the Noncompetition Agreement[6] provides in part:

---

[6] The Noncompetition Agreement also provides the following restrictions:

Employee cannot have any direct or indirect ownership in, or hold any leadership position in, any entity that engages in the manufacture, sale, design or distribution of:

  (W) Polymer concrete trench drainage systems;
  (X)  All other surface drainage systems;

- Employee agrees not to directly or indirectly,

  ***

  (iii) **solicit business similar to the Business from any customers of the Company which have done business with, or potential customers which have been in contact with the Company or the Employee during his employment by the Company** ....

  (Noncompetition Agreement, ¶1(c)) (*emphasis added*)

- The non-compete is enforceable under North Carolina law

- The non-compete's two (2) year time restriction is reasonable

- Although Juszczyk arguably engaged in some individual or personal preparations for his employment prior to February 1, 2008, Juszczyk's first official day on the job (for purposes of payroll / compensation) was February 1, 2008 (Document #68 / Pl.'s Ex. 3)

- Prior to accepting ABT's offer of employment and executing the non-compete, Juszczyk questioned Cucchiara about the consequences of agreeing to the terms as proposed.[7]

- Juszczyk was advised that the non-compete was "non-negotiable" (Juszczyk Exh. 3 / January 7, 2008 Email from Cucchiara to Juszczyk)

- The non-compete indicates that Juszczyk signed the document on February 1, 2008

- The actual execution date of the non-compete in relation to Juszczyk's first day of employment is immaterial in that Juszczyk was made aware of its terms prior to

---

(Y) Extended polystyrene concrete forming systems used in connection with surface drainage systems; and
(Z) Other products under design or developed, distributed, sold or manufactured during the term of Employee's employment

[7] Juszczyk recognized that if he left ABT, his employment options would not include Sportsfield. Juszczyk voiced his concern that "since there is so little competition in the sports drain business, the only place I can leave to is ACO ...." (Juszczyk Exh. 3)

accepting the offer of employment and was advised, unequivocally, that consent to the non-compete was requisite to ABT's offer of employment

- Juszcyzk's formal sales territory with ABT initially included parts of eleven midwestern states, including Indiana, Illinois, Missouri, Kansas, Wisconsin, Minnesota, Nebraska, North and South Dakota, and Texas. (Juszcyzk Aff. ¶12)

- Juszczyk sold products to at least sixty-five (65) of ABT's customers within the United States, including Hellas Construction ("Hellas")

- Juszczyk was also in contact with other potential customers and design professionals in an effort to obtain inclusion of ABT's SportsEdge® product line in their project specifications

- As a preliminary ruling, the Court finds the Noncompetition Agreement's term regarding geographic territory to be reasonable in light of the unique / niche market, Juszczyk's compensation for sales made outside the bounds of his original territory prior to his departure from ABT, and Juszczyk's access to and possession of ABT's trade secrets and confidential information pertinent to areas outside of his official midwestern territory

- Juszczyk and SSI engaged in the direct solicitation of previous ABT customers and admitted  he used the ABT data to "win business" for Sportsfield  (3/17/2010 Hr'g Tr. 463)

- Sportsfield was complicit in everything Juszczyk did to build SSI's business at ABT's expense

- On September 14, 2009, Juszczyk and SSI [*i.e.*, Moxley and Oliver]  exchanged email correspondence tending to show that Juszczyk intended to help SSI (Document #127)

- On September 21, 2009, Juszczyk emailed Doug Sohns and directed Sohns to underbid ABT by 10-15% and to "drop" Juszczyk's name in the process (Pl.'s Exh. 121, 122)

- Sportsfield President Wayne Oliver recognized that Juszczyk was sharing information obtained from "inappropriate sources" and directed Moxley to contact Juszczyk immediately
- Juszczyk's disclosure and solicitation continued after the lawsuit was commenced
- On October 23, 2009, Juszczyk emailed Doug Sohns from his personal hotmail account suggesting that SSI pursue a potential lead concerning a job for Hellas Construction. Juszczyk included ABT's special pricing for Hellas in the message.
- On October 26, 2009, Juszczyk emailed R. Mason, the SSI counterpart to the position Juszczyk previously held at ABT / SportsEdge, also from his personal hotmail account
- ABT invests a substantial sum in educating and training its sales staff, Juszczyk included
- Juszczyk successfully built personal relationships within the industry and quickly became the "face" of ABT's SportsEdge Division
- The measures taken by SSI to prevent Juszczyk from continuing to engage in this behavior were largely unsuccessful in that Juszczyk continued to disclose ABT's proprietary and confidential information via his personal email account (Document #68 / Pl.'s Exh. 2)
- ABT lost business between September 2008 and February 2009 (Simon Dep. 135 / Dep. Exhs. 4, 5)
- SSI secured new business from the following ABT clients with Juszczyk's assistance: Hellas Construction [info on pricing and product relationships between Hellas and ABT shared by Juszczyk], ACO Polymer Products, Inc. [Wright City Athletic Complex Project and Elkhorn Middle project - disclosure of details of ABT's / SportsEdge's bid for same project], and Southern Illinois University [Carbondale Project - reliance on Juszczyk's prior knowledge of project].
- Irreparable harm to ABT is presumed in light of the Court's findings regarding the misappropriation of trade secrets

- If ABT's motion for preliminary injunction is not granted, ABT will suffer irreparable harm by way of injury to its goodwill and customer relationships

- If ABT's motion for preliminary injunction is granted, the harm to Juszczyk is minimal in that Juszczyk was not permitted to copy and share the ABT data

- If ABT's motion for preliminary injunction is granted, Juszczyk is in an unusually favorable position regarding future employment given the lengths SSI has gone to retain him as an SSI employee[8]

- If ABT's motion for preliminary injunction is granted, the harm to SSI is minimal for the same reasons – SSI is merely back in the competitive position it was in prior to the misappropriation of ABT's trade secrets. *See* <u>Asheville Assoc., Inc. v. Miller</u>, 255 N.C. 400, 404 (1961).

- The balance of the equities favors the grant of ABT's request for injunctive relief

- Public interest favors the protection of confidential business information and the enforcement of valid contracts

- ABT is entitled to the preliminary injunctive relief it seeks. *See* N.C. GEN. STAT. §66-154(a).

- ABT's Motion for Preliminary Injunction is <u>granted</u>.

## IV. Sportsfield's Motion for Preliminary Injunction

Sportsfield seeks a preliminary injunction against ABT based upon ABT's alleged violations of the Lanham Act. More specifically, Sportsfield contends that ABT's advertising materials falsely represent (or mislead) that ABT is the manufacturer of all of its product line as opposed to identifying, where appropriate, the business entity that manufactured the product and then

---

[8] The Court notes, however, that SSI's decision to remove Juszczyk from outdoor sports equipment sales and place him in the indoor sports equipment position does not, in and of itself, eliminate all of ABT's concerns given that some of the same businesses and same people will be involved in both of these market areas. Oliver estimated that 10 to 20% of sales would be cross-over sales between the outdoor / indoor sports markets. It's highly likely that some of Juszczyk's business contacts and relationships developed while working with ABT are responsibile for both outdoor and indoor sports equipment sales.

contracted with ABT for marketing and distribution. Section 43(a) of the Lanham Act imposes liability on one who engages in false advertising, by making false description or representation about one's own, or another's goods or services. *See* 15 U.S.C. §1125(a)(1)(B); C.B. Fleet Co., Inc. v. SmithKline Beecham Consumer Healthcare, L.P., 131 F.3d 430, 434 (4th Cir.1997). A representation constitutes a violation of the Lanham Act when it is "false on its face, or although literally true, likely to mislead and to confuse consumers given the merchandising context." C.B. Fleet, 131 F.3d at 434. If an advertising claim is literally false, "the court may enjoin the use of the claim without reference to the advertisement's impact on the buying public." Id. (*citing* McNeil-P.C.C., Inc. v. Bristol-Meyers Squibb Co., 983 F.2d 1544, 1549 (2nd Cir.1991); Buffalo Wings Factory, Inc. v. Mohd, 622 F.Supp.2d 325, 334 (E.D.Va.2007).

- **Sportsfield fails to present a "clear showing" of likelihood of success on the merits regarding its false advertising claim**

  - In order to succeed on this theory, Sportsfield must establish the following:

    1) that ABT made a false or misleading description of fact or representation of fact in a commercial advertisement about its own or another's product;

    2) that the misrepresentation is material - likely to influence the purchasing decision;

    3) that the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience;

    4) that ABT placed the false or misleading statement in interstate commerce; and

    5) that Sportsfield has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

    Scotts Co. v. United Indus. Corp., 315 F.3d 264, 272 (4th Cir.2002).

  - The record evidence does not bear Sportsfield's "literally false" claim out since ABT, in fact, has manufacturing capability and manufactures its own SportsEdge® line of products.

17

- Sportsfield has not persuaded the undersigned that ABT's advertising is deceptive or confusing.

- ABT doesn't market its products and services to the general public. (3/16/2010 Hr'g Tr. 278)

- Given the level of sophistication of the audience – a niche group of sports architects and sports contractors – Sportsfield cannot show that the alleged misrepresentations actually deceive or have the tendency to deceive a substantial segment of its audience.

- According to the testimony of Cucchiara, ABT fielded only one (1) inquiry in fourteen (14) years concerning the identity of the actual manufacturer.[9] (3/16/2010 Hr'g Tr. 229-31, 325)

- Both ABT and Sportsfield have ongoing or repeat business with many of their clients, making deception or confusion less likely.

- Because Sportsfield relies on conduct by ABT that has allegedly been going on for years, Sportsfield simply cannot demonstrate imminent, irreparable harm.

- Sportsfield generally alleges disadvantage in the marketplace (*i.e.*, interference with Sportsfield's ability to effectively market its products, create brand loyalty, and / or relationships with potential customers, diversion of sales).

- Irreparable injury under Section 43 of the Lanham Act may be proven by demonstrating "a reasonable basis for the belief that ... [it] is likely to be damaged as a result of the false advertising." W.L. Gore & Assocs., Inc., 788 F.Supp. 800, 810 (D.Del.1992).

- Sportsfield has been aware of ABT's advertising since 2004. (3/16/2010 Hr'g Tr. 347,355) The only allegation that the potential harm to Sportsfield is imminent is the representation that ABT's "level of false advertising is escalating." (SSI's Closing Brf. 13-14)

---

[9] Beyond the inquiry, ABT was not asked to substitute the product or take any other corrective action.

- The most recent example of ABT's alleged false advertising stems from issuance of a new ABT catalog *in early 2010.* (Sportsfield contends ABT expanded its purported misrepresentations regarding its role in manufacturing the products being offered.) (Moxley Decl. Ex. C)

- Based on the record evidence, it has been ABT's practice *for many years* to use the photographs, schematics, etc., of its client-manufacturer in the marketing of products. ABT contracts with manufacturers and other third-parties to market and distribute goods on behalf of the other party / manufacturer. In other words, ABT uses its logo and marks *only with the permission of its clients*.

- Sportsfield has engaged in the same practice. (3/17/2010 Hr'g Tr. 421-24)

- The benefits of ABT's marketing then enure to both ABT and the manufacturer.[10]

- The Court is not persuaded that Sportsfield's Lanham Act claim cannot be adequately addressed in the course of the routine litigation as opposed to issuance of a preliminary injunction.[11]

- Sportsfield's Motion for Preliminary Injunction is <u>denied</u>.

## V. Order

For the reasons described herein,

**IT IS, THEREFORE, ORDERED THAT:**

1) ABT's Motion for Preliminary Injunction is **GRANTED**. Accordingly, the following relief is warranted:

---

[10] To the extent the actual manufacturer of any given product takes issue with ABT's marketing practices, or considers them false or misleading, the manufacturer is entitled to raise that issue with ABT directly and / or bring such an action to the Court's attention. Significantly, no such action has been taken.

[11] Sportsfield concedes its ability to measure damages if ultimately successful on its Lanham Act claim. According to Wayne Oliver, President and CEO of Sportsfield, its damages will be determined by reviewing ABT documents related to projects ABT was awarded where equipment was sold that was not manufactured by ABT or where ABT secured drainage jobs that also included the sale of equipment ABT did not manufacture. (W. Oliver Decl. ¶3 / Exhibits A-C)

a) Juszczyk is hereby **ENJOINED** from soliciting the business of any ABT customers or contacts with whom he had contact with during his employment with ABT as specifically identified by ABT to Defendants[12];

b) Juszczyk and SSI are hereby **ENJOINED** from disclosing, using, or relying upon ABT's trade secrets, proprietary or confidential information;

c) Defendants shall certify on a monthly basis confirmation of compliance with the relief awarded in subsections "a" and "b" and file the same with the Court;

d) Juszczyk and SSI shall return all ABT trade secrets or confidential information in their possession, custody, or control;

e) Defendants shall confirm by independent forensic analysis[13] of Juszczyk's personal computers and hardware, the SSI computer network and any computers or hardware of Oliver, Moxley, Sohns, Maney, Goulet, Hulbert, Rosa, and Mason, that all such data has been returned;

f) Defendants shall preserve all data currently stored on computers over which they have possession, custody or control, and personal digital assistant or mobile telephone, including any information stored on backup media, and produce to an independent computer forensic expert the computer hard drives or other hardware from any and all computers which currently stores or has stored ABT confidential information and trade secrets; and

---

[12] The undersigned agrees with ABT that the following types of information constitute trade secrets, confidential or proprietary information, or both:

> ABT sales price lists, sales performance data, product performance data, project quotes, project data, leads, business action plans, business forecasts, plant layout schematics, SWOT (Strengths, Weakness, Opportunities, Threats) analyses of markets and competitors, financial data and information, third party confidential information, customer and supplier contacts and preferences, and drawings, schematics, and information regarding ABT products in development

[13] The Court suggests that the parties consider the expert hired by ABT earlier, Susan McMinn, as she is already familiar with the circumstances and contentions of the parties.

g) Juszczyk shall preserve and produce all emails on any computer under his control, on his SSI computer(s), internet mail server, personal digital assistant or other hardware related to his resignation from ABT and / or his contract with SSI.

2) ABT's request for an award of all fees, costs and expenses incurred in prosecuting this action pursuant to Section 2 of the Noncompetition Agreement and Section 4 of the Confidentiality and Inventions Agreement will be **DEFERRED**;

3) Defendants will be *solely* responsible for all costs associated with the independent forensic analysis required by the instant Order; and

4) Sportsfield's Motion for Preliminary Injunction is **DENIED.**

Signed: August 9, 2010

Richard L. Voorhees
United States District Judge