# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
## Civil Action No.: 5:09CV119-V

| | |
|---|---|
| ABT, INC.,<br>    Plaintiff,<br><br>v.<br><br>PETER JUSZCZYK and<br>SPORTSFIELD SPECIALTIES, INC.,<br>    Defendants. | **O R D E R** |

**THIS MATTER** is before the Court on post-trial motions filed by ABT, Inc. ("ABT") (Documents ## 524, 526), as well as all responsive memoranda submitted by Defendant Sportsfield Specialties, Inc. ("Sportsfield"). Also before the Court is Peter Juszczyk's letter-motion requesting a treble award on his Counterclaim verdict against ABT. (Document #529)

## I. ABT's Motion for Entry of Judgment

This matter proceeded to trial on July 18, 2011. At the conclusion of the case, the jury rendered verdicts in favor of ABT against Sportsfield in the amount of $1,677,183, and in favor of ABT against Peter Juszczyk in the amount of $186,354, along with finding both Defendants jointly and severally liable in the amount of $46,588.50.[1] (Documents ##517-18) The jury also found in favor of Peter Juszczyk against ABT in the amount of $3,400 on his Counterclaim. (Document #519)

On August 4, 2011, the Court issued an Order granting ABT's Motion for Treble Damages pursuant to N.C. Gen. Stat. § 75-16 (2011). (Document #523) According to ABT, the trebled

---

[1] ABT successfully asserted the following causes of action: 1) breach of contract against Juszczyk; 2) computer trespass in violation of N.C. Gen. Stat. §14-458 against Juszczyk; 3) tortious interference with contract by SportsField; 4) unfair and deceptive trade practices in violation of N.C. Gen. Stat. §75-1.1 against both Defendants; and 5) misappropriation of trade secrets in violation of N.C. Gen. Stat. §66-152, *et seq.*, against both Defendants.

award requires monetary judgments in favor of ABT in the following amounts: $2,795,305 (Sportsfield), $279,531 (Juszczyk), and $139,765.50 ( joint and several). (ABT's Motion at 1-4, n. 1, 3).

In addition to the award itself, ABT seeks pre-judgment interest on the actual damages awards and post-judgment interest on the trebled award. (ABT's Motion at 2-3). *See* Johnson v. Colonial Life & Accident Ins., 618 S.E.2d 867, 872 (N.C.App. 2005) (pre-judgment interest award should not attach to the trebled damages, but only to the actual damages awarded) *(internal citation omitted)*. Based upon North Carolina's statutory rate of 8 percent, ABT calculates the daily prejudgment interest on the respective damages awards as $362.27 (Sportsfield) and $40.25 (Juszczyk).

Sportsfield opposes the final judgment proposed by ABT. Sportsfield first contends that the judgment ABT seeks cannot be had because the jury verdict is inconsistent.[2] This Court has already rejected Sportsfield's contention. Upon initial review of the verdict forms, the undersigned determined that a discrepancy existed concerning the jury's calculation of joint and several liability amongst the Defendants. The Court conducted a sidebar to raise the matter with counsel. The issue raised by the verdict sheet in that regard was resolved by agreement of the parties without further attention from the jury. (7/28/11 Trial Tr. 1869 / Document #520.). However, Sportsfield's counsel also challenged the "Total Damages Figure" represented on the Sportsfield Verdict (Sportsfield Verdict Issue 4) and asked that the jury be required to reconvene and reconsider their answers as to total damages. The gist of Sportsfield's argument was that the jury necessarily misunderstood the

---

[2] There are actually two verdict sheets that relate to Sportsfield – (i) a verdict sheet that addresses ABT's claims against Sportsfield, including the damages the jury found for each individual cause of action ("Sportsfield Verdict"); and (ii) a verdict sheet entitled "Final Issue" that asks the jury for its damages figure, if any, attributable to the joint acts of Sportsfield and Juszczyk with respect to the unfair and deceptive trade practices claim ("Final Issue Verdict"). (Documents ##517, 520)

verdict sheet because the recovery per the verdict was, in fact, duplicative. Sportsfield posited that the actual damages proven, including lost profits, were conceptually the same and could not be separated out for purposes of each individual cause of action. (7/28/11 Trial Tr. 1864.). More specifically, Sportsfield took issue with the nature of the award for unfair and deceptive trade practices, *infra*. (7/28/11 Trial Tr. 1860-66.). According to Sportsfield, the jury must have intended for Sportsfield to be held responsible for a total amount of $559,061 on all of the causes of action rather than the larger sum. (7/28/11 Trial Tr. 1861.). The parties were allowed to speak to the possible scenarios for the jury's intent and calculation of damages and be heard on any proposed remedy. Because the Court determined that the jury could conceivably have arrived at a total damages figure ($1,677,183) and then worked backwards from that figure by assigning or apportioning equal monetary awards to each cause of action for which they found Sportsfield liable ($559,061), the undersigned declined to question the jury's verdict.[3] (7/28/11 Trial Tr. 1861-62, 1865, 1867-68.). In other words, the Court found the verdict both consistent and rational despite Sportsfield's argument to the contrary.[4] *See* Cox v. Collins, 7 F.3d 394, 396 (4th Cir.1993) ("Jury verdicts must be upheld if a fair reading of special verdict form answers can be reasonably harmonized in view of the evidence.")(*citations omitted*); Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364 (1962) ("Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way."). For this reason, much of the authority cited by Sportsfield, including Fed. R. Civ. P. 49(b)(3) ("Answers Inconsistent with the Verdict"), is inapposite.

---

[3] The same method was utilized with respect to the verdict rendered against Juszczyk ("Juszczyk verdict"). (7/25/11 Trial Tr. 1853 / Document #518.).

[4] Sportsfield objected to the Court's ruling and requested that the jury be asked to clarify their intent. (7/25/11 Trial Tr. 1867.). Sportsfield's request was denied. (7/25/11 Trial Tr. 1867-68.).

As implied, *supra*, Sportsfield also opposes ABT's motion for entry of judgment on the basis that the judgment sought by ABT is contrary to law and would allow ABT to recover multiple times for the same harm. Sportsfield misunderstands the nature of the UDTPA claim altogether.[5] The UDTPA encompasses a broad range of activity, namely, anything that could be characterized as unfair or deceptive trade practice as defined by the applicable case law. *See* Quate v. Caudle, 381 S.E.2d 842, 845 (N.C.App.1989) ("There must be some conduct which is found to be unfair or deceitful to violate Chapter 75-1.1.") Indeed, the UDTPA cause of action, while partly derivative of ABT's other claims, provides a basis for liability independent from the statutory violation for misappropriation of trade secrets or any of the other claims asserted. As explained by the North Carolina Court of Appeals:

> Unfair and deceptive trade practices and unfair competition claims are neither wholly tortious nor wholly contractual in nature and the measure of damages is broader than common law actions. The measure of damages used should further the purpose of awarding damages, which is to restore the victim to his original condition, to give back to him that which was lost as far as it may be done by compensation in money.

Media Network, Inc. v. Long Haymes Carr, Inc., 678 S.E.2d 671, 681 (N.C.App.2009) (*internal citation omitted*); Bernard v. Central Carolina Truck Sales, 314 S.E.2d 582, 585 (N.C.App.1984) ("[A]n action for unfair or deceptive acts or practices is a distinct action apart from fraud, breach of contract, or breach of warranty.") Even so, "[w]here the same course of conduct gives rise to a traditionally recognized cause of action, ... and as well gives rise to a cause of action for violation of G.S. 75-1.1, damages may be recovered either for the [traditionally recognized cause of action], or for violation of G.S. 75-1.1, but not for both." Marshall v. Miller, 268 S.E.2d 97 (N.C.App.1980), *modified*, 276 S.E.2d 397 (1981); Poor v. Hill, 530 S.E.2d 838, 848 (N.C.App. 2000) (*same*). The

---

[5] Understandably, Sportsfield is displeased with the verdict as the jury appears to have adopted most (approximately 90% per Sportsfield) of ABT's proposal concerning the calculation of damages. (SSI Mem. In Opp'n at 2.)

UDTPA verdict against Sportsfield was based in part upon conduct deemed to be "unfair competition" – more than a mere breach of contract, tortious interference, or misappropriation of trade secrets.

Related to its double recovery argument, Sportsfield next contends that ABT effectively asserts a new theory of liability under the UDTPA, namely, misappropriation of "confidential" information as distinguished from ABT's trade secrets. In the Court's view, the precise characterization of any given category of information has no bearing on the total damages award, particularly given that the jury, to all appearances, arrived at a total ABT award and worked backwards apportioning the sum per claim. The special interrogatories submitted to the jury in connection with ABT's claim under the UDTPA included the following questions:

> **3.** You will now be asked to consider various actions which ABT claims are Unfair and Deceptive Trade Practices committed by Sportsfield. For each item, indicate whether you find that Sportsfield committed the action alleged.
>
> (a) Misappropriated ABT's trade secret information by acquiring, using or disclosing such information;
>
> Yes _____ No _____
>
> (b) Downloaded, retained, transferred and disclosed ABT's confidential, proprietary or trade secret information internally or to its business partners
>
> Yes _____ No _____
>
> (c) Copied or used ABT, Inc.'s confidential information or trade secrets to advance its own business interests
>
> Yes _____ No _____
>
> (d) Forwarded or transmitted ABT's confidential information or trade secrets to Sportsfield's business partner ACO Polymer Products, Inc. ***to unfairly compete*** against ABT;
>
> Yes _____ No _____

(e) Despite knowing that Peter Juszczyk was subject to a Noncompetition Agreement, pursued and hired him ***for the purpose of competing unfairly*** with ABT by soliciting customers with whom he had previously solicited at ABT using ABT's information;

Yes \_\_\_\_\_          No \_\_\_\_\_

(f) Despite knowledge of Peter Juszczyk's contractual obligations to ABT to refrain from soliciting former ABT customers or using ABT confidential information or trade secrets, Sportsfield or its employees solicited such customers or used such information ***to unfairly compete*** against ABT.

Yes \_\_\_\_\_          No \_\_\_\_\_

(Sportsfield Verdict at 4, Issue 3) (*emphases added*). Thus, the parties contemplated at the time the case went to the jury that, subject to the Court's legal determination that the specific conduct identified constituted an "unfair" or "deceptive" trade practice, ABT's UDTPA claim could be sustained by an affirmative response to any one of the above questions (a) through (f). Although question (a) is duplicative of Sportsfield Verdict Issue 2 (misappropriation of trade secrets), questions (b) and (c) refer to confidential information, proprietary information, ***or*** trade secrets and could be sustained by either factual finding. Moreover, questions (d) through (f) addressed specific means of unfair competition notwithstanding trade secret status and the tortious interference verdict (Sportsfield Verdict Issue 1). For these reasons, the Court rejects Sportsfield's argument that it is essential to parce out each item as either "confidential" or "trade secret" material or generally as to the propriety of the total damages award.[6]

---

[6] In a previous ruling, the Court identified the categories of material most likely to fall within trade secret protection as quotes for pending projects, customer price lists, and customer specifications. (Document #230 / Preliminary Injunction at 8-11.) Although there is significant overlap, the Court also contrasted these categories of material with information that might not rise to trade secret status (*i.e.*, certain aspects of ABT's plans and designs for the improvement of the Hellas goal posts) but was nonetheless protected pursuant to the terms of ABT's Confidentiality Agreement. (Id. at 11-12.)

**II. ABT's Renewed Motion for an Order of Attachment**

The Court has already considered ABT's request for an Order of Attachment against certain of Sportsfield's assets (*i.e.*, real property) within the State of North Carolina. Although the Court did not issue a written Order, the undersigned explained from the bench in open court that this was not a case that warranted such an extraordinary remedy in that there was nothing to indicate Sportsfield would be unable to satisfy any judgment entered against it. (Oral Order of July 18, 2011 disposing of Document #456); Bizzell v. Mitchell, 142 S.E. 706 (1928) (Purpose of attachment is to conserve property for execution after judgment."). Accordingly, ABT's motion was denied. Regardless of the statutory criteria, N.C. GEN. STAT. § 1-440.1, *et seq.*, the Court retains a great deal of discretion on this issue. Balcon, Inc. v. Sadler, 244 S.E. 2d 164, 166 (N.C.App. 1978) (it appears that the exercise of such jurisdiction - in rem or quasi in rem [attachment] - is a matter for the discretion of the court.) For the reasons already stated, ABT's renewed motion is likewise denied.

**III. Peter Jusczyk's Motion For Treble Award On Counterclaim**

In response to the Court's August 4, 2011 Order trebling ABT's damages pursuant to N.C. GEN. STAT. § 75-16 (2011), Defendant-Counterclaimant Peter Juszczyk moves for a treble award on his Counterclaim against ABT. However, Juszczyk's Counterclaim asserted an ordinary breach of contract claim. The issue submitted to the jury read as follows:

> **1.** Do you find by a preponderance of the evidence that ABT and Peter Juszczyk entered into an agreement which required ABT to reimburse Peter Juszczyk for certain travel expenses associated with his employment with ABT?
>
> Yes \_\_\_\_\_      No \_\_\_\_\_

(ABT Verdict Form at 1, Issue 1) The measure of damages for breach of contract is actual or compensatory damages. In other words, as a general rule, "the injured party in a breach of contract action is awarded damages which attempt to place the party, insofar as possible, in the position he

would have been in had the contract been performed." *See* Majewski Enterprises, Inc. v. Park at Langston, Inc., 711 S.E.2d 454, 460 (N.C.App. 2011)) (*quoting* Strader v. Sunstates Corp., 500 S.E.2d 752, 757 (1998)). Juszczyk did not assert an unfair and deceptive trade practice claim, or any other claim potentially entitling him to treble damages. To the extent Juszczyk sought to present evidence of more egregious conduct by ABT in addition to his contractual claim, his other counterclaims were all dismissed as a matter of law prior to submission of the case to the jury.[7] For these reasons, Juszczyk is not entitled to a treble award on his Counterclaim.

Juszczyk also seeks interest accrued in the amount of $1655.50 to his monetary award, presumably assessed as a result of an unpaid credit card expense. Like ABT, Juszczyk is entitled to prejudgment interest on the monetary award of $3,400 at the statutory rate of 8 percent. Because Juszczyk is *pro se*, the Court will construe his filing accordingly as a motion for prejudgment interest. However, the $1655.50 Juszcyk seeks to recover now was not before the jury and cannot simply be added to the verdict amount.

Finally, Juszczyk seeks attorney fees related to "defense of his Counterclaim."[8] Juszczyk does not provide the Court with a breakdown of services rendered by his former attorney or copies of invoices from counsel detailing allocation of time and hourly rates. Instead, Juszczyk asserts that "[w]hile being represented by counsel from October, 2010 to approximately August of 2011, [he] acquired, through no fault of his own $162,000 in attorney fees from Maloney Legal." (Motion at

---

[7] Juszczyk's invasion of privacy and abuse of process counterclaims were dismissed at summary judgment and his tortious interference counterclaim was dismissed as a matter of law at the close of the evidence at trial.

[8] The Court construes Juszczyk's statement as seeking reimbursement for attorney fees related to the prosecution (not defense) of his Counterclaim alleging Breach of Contract.

1.). In short, the undersigned has no way to measure or determine reasonable attorney fees on the existing record.[9]

Aside from the deficient record, attorney fees are not recoverable for a cause of action alleging breach of contract. *See e.g.*, Potter v. Hilemn Labs, Inc., 564 S.E.2d 259, 266 (2002); Delta Env. Consultants of N.C., 510 S.E.2d 690 (N.C.App.1999) ("[T]he general rule has long obtained that a successful litigant may not recover attorneys' fees, whether as costs or as an item of damages, unless such recovery is expressly authorized by statute.") (*internal citation omitted*).

Juszczyk's motion is granted in part and denied in part.

**IV. Order**

In conclusion, the Court finds that entry of judgment consistent with the collective jury verdicts (*i.e.*, Sportsfield Verdict, Juszczyk Verdict, Final Issue Verdict, and ABT Verdict) is proper. To the extent an argument made by Sportsfield is not addressed, it is deemed to have no merit or otherwise require the Court to look behind the jury verdicts (based upon the flawed Sportsfield premise that the jury was necessarily confused about the instructions or verdict sheets).

**IT IS, THEREFORE, ORDERED** that ABT'S Motion for Entry of Judgment is hereby **GRANTED** consistent with the terms set forth herein;

**IT IS FURTHER ORDERED** that Peter Juszczyk's Motion for Treble Award and Attorney Fees is **DENIED** and his Motion for Prejudgment Interest is **GRANTED;** and

---

[9] The Court takes judicial notice that Jusczyk was represented by Maloney Law & Associates, PLLC, from on or around October 2009 through October 20, 2010. Attorney Margaret Maloney was actively representing Juszczyk at the time of removal and Attorney Tamara L. Huckert filed a Notice of Appearance on November 4, 2009. (Documents ##1, 6) On October 20, 2010, the magistrate judge granted counsel's "Motion For Order Allowing Withdrawing Of Counsel," filed October 15, 2010. (Documents ##239, 240) Counsel were permitted to withdraw before this case proceeded to trial and well before August 2011.

**IT IS FURTHER ORDERED** that the Deputy Clerk shall enter Final Judgments in this matter consistent with the jury verdicts.

Signed: December 20, 2011

Richard L. Voorhees
United States District Judge